*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MCMILLION/FAGAN, Minors.

UNPUBLISHED
November 14, 2024
10:17 AM

No. 370224
Calhoun Circuit Court
Family Division
LC No. 2016-003511-NA

Before: BOONSTRA, P.J., and MURRAY and CAMERON, JJ.

PER CURIAM.

Respondent[1] appeals as of right the trial court's order terminating her parental rights to her minor daughter, AM, under MCL 712A.19b(3)(j) (reasonable likelihood of harm if child returned to parent). Respondent's parental rights were terminated at the initial dispositional hearing after the trial court found aggravated circumstances for termination. Because there were no aggravated circumstances, we vacate the order terminating respondent's parental rights and remand for further proceedings consistent with this opinion.

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY

The trial court took jurisdiction over this case after respondent overdosed on methamphetamine while home alone with AM. Her home was in disarray and there were prescription pills scattered within AM's reach. Respondent was admitted to a psychiatric hospital out of state and AM was placed in the care of a family member.

This is not respondent's first case involving Children's Protective Services (CPS). In 2016, it was discovered respondent had issues of housing, domestic violence, substance abuse, and mental health. AM was removed from the home during the 2016 case as well. The 2016 case

---

[1] AM's father is deceased and was not a party to this petition. The trial court terminated jurisdiction over respondent's other child, FF, and the proceedings involving FF are not relevant to resolution of this appeal.

languished for several years before the trial court terminated jurisdiction and the family was reunited.

In this case, the Department of Health and Human Services (DHHS) alleged aggravated circumstances justified the termination of respondent's parental rights at the initial dispositional hearing. The trial court subsequently terminated respondent's parental rights at the conclusion of the initial dispositional hearing. This appeal followed.

## II. REASONABLE EFFORTS AND TERMINATION AT INITIAL DISPOSITION

Respondent disputes the trial court's finding that aggravated circumstances existed to terminate her parental rights at the initial dispositional hearing. She asserts termination at the initial dispositional hearing may be pursued only in limited situations—none of which were present here. We agree.

"Under Michigan's Probate Code, [DHHS] has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, 500 Mich 79, 85; 893 NW2d 637 (2017), citing MCL 712A.18f(3)(b) and (c); MCL 712A.19a(2). Reasonable efforts include the creation of "a service plan outlining the steps that both [DHHS] and the parent will take to rectify the issues that led to court involvement and to achieve reunification." *Hicks/Brown*, 500 Mich at 85-86, citing MCL 712A.18f(3)(d).

But, reasonable efforts are not required in all cases. MCL 712A.19a(2) sets forth the limited circumstances in which reasonable efforts are not necessary, providing, in relevant part:

> (2) . . . . Reasonable efforts to reunify the child and family must be made in all cases except if any of the following apply:
>
> (a) There is a judicial determination that the parent has subjected the child to aggravated circumstances as provided in section 18(1) and (2) of the child protection law, 1975 PA 238, MCL 722.638.
>
> \* \* \*
>
> (c) The parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights. [MCL 712A.19a(2).]

The "aggravated circumstances" referenced in subsection (2)(a), "are limited to six events or occurrences in the life of a child." *In re Simonetta*, 340 Mich App 700, 708; 987 NW2d 919 (2022) (quotation marks omitted). These events are:

> (*i*) Abandonment of a young child.
>
> (*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.
>
> (*iii*) Battering, torture, or other serious physical harm.

(*iv*) Loss or serious impairment of an organ or limb.

(*v*) Life threatening injury.

(*vi*) Murder or attempted murder.  [MCL 722.638(1)(a).]

The trial court in this case erroneously reasoned that this case could proceed to termination at initial disposition, stating:

> The People have requested initial termination at disposition.  When you request initial termination, you must show aggravating circumstances.  There's been prior case law [sic] that indicated . . . for example, under the subsection that allows termination for a prior termination, they said under subsection (3), under [MCL] 712a.19b, subsection (3), "that a prior termination in and of itself was not sufficient, you had to have an aggravated circumstance."  The statute was . . . amended after that for the court's consideration.  In initially looking at this, the Court considered . . . petition one started in 2016 and during the pendency of this case the parties discussed whether MCL 712a.19b subsection . . . (3)(c) applied.  That is, "That a parent was a respondent in a proceeding brought under this chapter", [sic] which this parent was in petition one, "182 or more days had passed", that had happened.  "And the Court by clear and convincing evidence found that the conditions that lead [sic] to adjudication continue to exist and there's no reasonable likelihood . . . that the conditions will be rectified withing [sic] a reasonable amount of time considering the child's age."
>
> The way that that is written, statutory construction, there is no case law [sic] on point that says that you . . . can't do what's called tacking and I'm making a record of this just to indicate that there was a previous case, there is more than 182 days, the conditions that lead to removal are the same conditions.  However, what happened in that case is that there was a return and that case closed.  This Court finds that as a legal matter, and I made this decision earlier, so it was not argued by the People, that you cannot do what this Court considers tack, which means once a case is closed you must do a new adjudication, a new disposition and have another 182 or more days.  However, I do think that that can be considered in whether or not there are aggravating circumstances.  That there has been this prior termination, there a prior disposition, that went on for over four years and that . . . a year of return before ongoing services steps in and then the next year this new case is opened with a removal.  So, while I do not believe you can find clear and convincing evidence that would suffice or made the statutory requirement under (3)(c), I do think that the Court can consider the fact that, but for the closure, that provision would clearly apply by clear and convincing evidence.  Again, the issues at the time were suicidal ideation, mental illness, substance abuse and housing.  The issues today are suicidal ideations, substance abuse and housing, so there would be no doubt but for that prior petition closing, that (3)(c) would apply, and I think we can consider that part of the aggravated circumstances that the Court would consider.

-3-

The basis for the People's argument solely . . . rests on subsection (j) and that is, "That there's a reasonable likelihood based on the conduct or capacity of the child's parent, that the child will be harmed if the child is returned to the home of the parent." There were several discussions and requests for research throughout this case, to see if counsel had any cases that show that subsection (j) could stand by itself or that subsection (j) could not stand by itself. So, for example it would have been defense attorney's job to provide cases that were overturned because like the other section that I brought up, where it relied on only a termination, there's case law [sic] that says, "yeah, you're not just gonna rely on that section, you have to have aggravated circumstances." I do believe that if subsection (j) is read with the understanding that you need aggravated circumstances, that subsection (j) can rest on its own. So, and the reason I believe that is legislative intent, it says clearly in the statute, if you look at subsection (3), "the Court may terminate a parents [sic] rights to a child if the Court finds by clear and convincing evidence one or more of the following"; subsection (j) is one or more, it's one.

And was argued very well, by the Guardian ad Litem, if the . . . [L]egislature did not intent to allow the Court to rely on subsection (j) alone as a potential for consideration, then it shouldn't be in there. It should not be listed, it should say, you have to have (j) plus one of the other ones. That's not how it reads, it says you can have subsection (j), so as a matter of law this Court finds that you can have a termination based on subsection (j) alone, "that there's a reasonable likelihood based on the conduct or capacity of a child's parent that the child will be harmed if the child is returned to the home of the parent" as long as you look at it in light of an aggravated circumstance.

So, it can't be something small or menial, because I think if you look at today's situation, in most situations you could provide that there might be some type of harm, but in this particular case, I'm looking at it and I want to be clear, in the light of aggravated circumstances and I'm basing that on the prior case law which held that when you look at parents rights to one or more siblings have been terminated—you know, they add that—(inaudible)—serious and chronic neglect or physical or sexual abuse and the parents failed to rectify the conditions. Well, in this case we don't have a prior termination, we actually have a successful reunification, but I'm analyzing it in the form of, this aggravated circumstances that the situation is serious or chronic and that there's a reasonable likelihood based on the conduct or capacity of the child's parent that the child will be harmed based upon this serious or chronic abuse and if the child is returned to the home of the parent. So that is the light in which this Court is applying the statute to the facts of this case. Okay.

Now, let's go through, now that I've covered that legal standard because again, that was a question that was brought up through this case and I think it's important that the Court addresses the law up front in this matter.

So, let's talk about the case at hand. First of all, were reasonable efforts made? There absolutely was reasonable efforts in this matter, we had a

psychological evaluation, there was AA/NA, there was substance abuse testing, there was substance abuse screens, there was counseling offered. So, even though this is an initial disposition, there were many services offered, as well as prior to opening the case, ongoing services was involved for almost a year, and we had the four years of prior services through the other case. In addition, the parties continued to provide services up . . . until today. So, based upon that the Court will find that [DHHS] did participate in reasonable efforts and reasonable efforts were made as required by law.

Despite the trial court's lengthy narrative, its analysis is flawed in two significant ways. First, the trial court applied the incorrect framework when ordering termination of respondent's parental rights. Second, the trial court made substantive errors of law concluding: (a) that reasonable efforts were made; and (b) that termination was proper at the initial dispositional phase.

Regarding the framework question, the trial court's analysis suggests it misunderstood the process for termination of parental rights at the initial disposition. As explained, reasonable efforts are necessary in all cases unless an exception applies. MCL 712A.19a(2). In cases where DHHS seeks termination at the initial disposition, courts must consider whether an exception under MCL 712A.19a(2) applies. If an exception does not apply, then the court must ensure that DHHS makes reasonable efforts toward reunification. In referencing the terms "reasonable efforts" and "aggravated circumstances," the trial court found that reasonable efforts were established *and* that an exception existed. But if an exception existed, reasonable efforts are irrelevant and unnecessary. MCL 712A.19a(2). The trial court's analysis demonstrated a fundamental misunderstanding of the legal framework to be applied to petitions seeking termination at the initial disposition.

The trial court erroneously relied on the reasonable efforts expended in the 2016 case to find that reasonable efforts were made in this case. To be clear, DHHS made reasonable efforts in the 2016 case that resulted in a successful reunification. In this case, DHHS filed a new case that asserted similar allegations. The trial court's misplaced reliance on the efforts made in 2016 in this case is contrary to the Legislature's directive that, unless an exception exists, "[r]easonable efforts to reunify the child and family must be made in *all* cases[.]" MCL 712A.19a(2) (emphasis added). The trial court terminated its jurisdiction in the 2016 case, and jurisdiction in this case was established on the basis of new allegations. Thus, DHHS had an affirmative duty to make reasonable efforts at reunification in *this* case—it could not use the reasonable efforts made in the 2016 case to bypass the statutory requirement that reasonable efforts to reunify the family must be made in all cases. On appeal, DHHS skirts this issue by simply stating that the trial court "[found] reasonable efforts had been made[.]" DHHS offers no explanation of the trial court's reasoning or why it was legally sound.

The trial court also incorrectly concluded that this case could proceed to termination at the initial disposition. Again, one reason a court may proceed to termination at the initial disposition is when, "[t]here is a judicial determination that the parent has subjected the child to aggravated circumstances[.]" MCL 712A.19a(2). But, as noted above, there are only six circumstances that permit a court to find that "aggravated circumstances" exist—none of which are alleged in this case. MCL 722.638(1)(a); *Simonetta*, 340 Mich App at 708. Thus, the trial court's persistent

misunderstanding and misapplication of the phrase "aggravated circumstances" was patently erroneous.[2]

In sum, there are two methods by which courts can reach the question of whether there are statutory grounds for termination under MCL 712A.19b(3). The first method requires DHHS to make reasonable efforts at reunification. *Hicks/Brown*, 500 Mich at 85. If reasonable efforts are shown, then DHHS may petition for termination, and the trial court may consider whether statutory grounds were established under MCL 712A.19b(3). *Hicks/Brown*, 500 Mich at 85. The second method allows DHHS to bypass the reasonable-efforts requirement so long as one of the exceptions under MCL 712A.19a(2) is established. See, e.g., *Simonetta*, 340 Mich App at 707-708. In this case, the trial court wrongly concluded that termination was proper under the second method. Thus, the trial court was not authorized to consider whether statutory grounds for termination existed under MCL 712A.19b(3)(j), because reasonable efforts had not yet been made in this case.

We therefore vacate the trial court's order terminating respondent's parental rights and remand to the trial court for further proceedings. Although we vacate the order terminating respondent's parental rights, all other orders remain intact, including the trial court's order placing AM in DHHS's care.[3] We do not retain jurisdiction.

/s/ Mark T. Boonstra
/s/ Christopher M. Murray
/s/ Thomas C. Cameron

---

[2] Although not entirely clear, it seems the trial court's finding of "aggravated circumstances" may have been based on MCL 712A.19a(2)(c), which permits a court to proceed with termination at the initial disposition when "[t]he parent has had rights to the child's siblings involuntarily terminated and the parent has failed to rectify the conditions that led to that termination of parental rights." Indeed, the trial court discussed, at length, respondent's failure to rectify the conditions leading to the 2016 adjudication. It is undisputed, however, that respondent's parental rights to AM's sibling were *not* involuntarily terminated. Thus, it does not matter whether respondent failed to rectify the conditions leading to the adjudication in the 2016 case, and the trial court erred when it permitted the case to proceed to termination on this basis. Again, DHHS fails to explain this distinction on appeal, focusing instead on the question of statutory grounds for termination and whether termination was in AM's best interests.

[3] Given these conclusions, respondent's other arguments challenging the trial court's statutory-basis and best-interests determinations are moot.